No. 2594

## BARBER *v.* BARBER

January 29, 1924.                                          222 Pac. 284.

1. ATTORNEY AND CLIENT—ON COLLATERAL ATTACK ON DECREE, ATTORNEY'S AUTHORITY TO APPEAR CONCLUSIVELY PRESUMED.

   On a collateral attack on a separation decree the authority of an attorney to appear for the person whom he assumes to represent as recited in the decree is conclusively presumed.

2. DIVORCE—ATTACK ON SEPARATION DECREE HELD COLLATERAL.

   That an attack on a separation decree is directed to the jurisdiction of the court, and the decree was pleaded in the answer in the present divorce action, and its validity denied by the reply, does not prevent the attack from being collateral.

3. DIVORCE—SEPARATION DECREE OF SUPREME COURT OF DISTRICT OF COLUMBIA ACCORDED SAME EFFECT AS DECREE OF STATE COURT.

   The appearance of a wife in husband's separation action in the Supreme Court of the District of Columbia gives that court complete jurisdiction to enter a decree, and it must be accorded the same effect in matters res judicata as the decree or judgments of state courts.

4. DIVORCE—SEPARATION DECREE HELD TO ESTOP WIFE FROM ACQUIRING DOMICILE FOR DIVORCE PURPOSES.

   A decree of separation in an action by the husband in the District of Columbia *held* to estop the wife from acquiring a domicile in Nevada, giving a Nevada court jurisdiction of a divorce action.

5. DOMICILE — GENERALLY WIFE'S DOMICILE FOLLOWS THAT OF HUSBAND.

   Marriage creates a unity of the parties which generally gives them one domicile, and the husband has the authority to determine where it shall be; the wife's domicile following his, and his not changing with hers; but the wife under certain conditions may acquire a domicile apart from her husband.

6. DIVORCE—DOMICILE WITHIN STATE ESSENTIAL TO DECREE.

   Domicile within Nevada of one of the parties is essential to empower the courts of that state to dissolve the marital bond.

APPEAL from Second Judicial District Court, Washoe County; *Thos. F. Moran*, Judge.

Divorce action by Veronica B. Barber against Herbert S. Barber. Judgment for plaintiff, and defendant appeals. **Reversed. Rehearing denied.**

*Hoyt, Norcross, Thatcher, Woodburn & Henley*, and *M. A. Diskin*, for Appellant:

Decisions of Supreme Court of District of Columbia are entitled to same consideration in matters of res

adjudicata as those of courts of several states. Embry v. Palmer, 107 U. S. 3.

Columbia court found all charges of cruelty had been sustained. Alleged cruelty continued to about time respondent left there and came to Nevada. Same constitutes adjudication that respondent was guilty of cruelty, and she was not justified in establishing different domicile, and the Nevada court could not acquire jurisdiction. Haddock v. Haddock, 201 U. S. 562.

Sufficiency of affidavit for order of publication in District of Columbia should be tested by decisions of courts there. In Thompson v. Thompson, 35 App. Cas. 14, such affidavit was held sufficient. Ligare v. C. S. R. R. Co., 18 Pac. 777.

Res adjudicata is established. Thompson, supra; Atherton v. Atherton, 181 U. S. 151; Harding v. Harding, 198 U. S. 317; Averbuch v. Averbuch, 141 Pac. 701.

Court permitted testimony by plaintiff over objection by defendant to establish fact that attorney appeared in Columbia court without authority. This was error, being collateral attack upon judgment there which could not be made in court of this state. Martin v. Kirby, 34 Nev. 206; 1 Freeman, Judgments, sec. 128.

Some cases hold testimony will not be received in attempt to show attorney's appearance was unauthorized. Cigler v. Keinath, 167 Ill. App. 65; In Re Higgins, 124 N. Y. Supp. 1005; Carpenter v. City of Oakland, 30 Cal. 440.

Connecticut court held New York decree a mensa et thoro against nonappearing husband not enforceable in that state because New York was not matrimonial domicile. Piettis v. Piettis, 101 Atl. 13, where, in note, is considered apparent conflict with Thompson case which established that decree a mensa et thoro in matrimonial domicile upon constructive service is entitled to full faith and credit and is bar to suit by wife in another state.

The question in all these cases is: Where is the matrimonial domicile? When parties are married in certain state, have their matrimonial domicile there, and

husband continues to reside there, courts of that state have jurisdiction of suit by him, though wife had left and could not be reached by formal process. Thompson case, supra; Kelly v. Kelly, 87 S. E. 567.

Suit for divorce was brought in France, for cause accruing there while both parties resided there. Wife had theretofore sued in same court and was thereby estopped to deny that court's jurisdiction on her husband's suit on ground that parties' domicile was in New York, such ground being inconsistent with her former position. Gould v. Gould, 194 N. Y. S. 745; Jennings v. U. S., 264 Fed. 399.

*E. E. Roberts* and *Sardis Summerfield,* for Respondent:

Decree mensa et thoro does not pretend to change status of parties as married persons, but merely assumes to relieve husband of liabilities and duties. The decree is in personam and in no sense in rem. 2 Nelson, Divorce and Separation, 980; 14 Cyc. 710, 711.

Federal decisions are practically uniform that judgment in personam does not bind nonresident where he did not appear, and which is based on constructive service only. Pennoyer v. Neff, 24 L. Ed. 565; D'Arcy v. Ketchum, 13 L. Ed. 648.

Where there is total lack of jurisdiction, entire proceeding is nullity, and subject to collateral attack. Guaranty Co. v. Freen Co., 35 L. Ed. 116.

A void judgment can be collaterally attacked. Long v. Tighe, 36 Nev. 129.

Where validity of record is directly put in issue, attack is direct, not collateral. Walker v. Goldsmith, 12 Pac. 537.

Matters pleaded as res adjudicata must have been actually litigated or opportunity to do so have been presented. McLeod v. Lee, 17 Nev. 103.

Neither Thompson, Atherton, nor Harding case is favorable to appellant's contention. In Harding case court held Illinois decree, being rendered by court having jurisdiction of parties at matrimonial domicile,

entitled to full faith and credit. In Atherton and Thompson cases previous decrees of divorce prevailed against separate maintenance suits because in divorce actions marriage status is res of litigation; in separate maintenance suits it is not. In Harding case previous maintenance decree, based upon personal service, actual litigation, and consent of defendant therein, prevailed against later divorce suit based upon identical matter litigated, because in maintenance suit the res, i. e., the marriage status, was not involved, and court, having acquired jurisdiction over defendant by personal service, had jurisdiction to render valid personal judgment against him. In Haddock case separate maintenance decree based upon personal service prevailed over previous divorce decree obtained upon constructive service in another state because court of each is exclusive judge of policy of its own laws, and full faith and credit clause of federal constitution does not apply in such cases.

Plea of res adjudicata should not be sustained because Columbia court acted without obtaining jurisdiction of Mrs. Barber, making its pretended decree corem non judice and void. Even if that court had jurisdiction, its decree is not res adjudicata of question of Mr. Barber's cruelty. That issue could not be raised without her appearance. She had legal right to refuse to appear, and was never required, under peril of waiver, to create opportunity to litigate it in that court.

By the Court, DUCKER, C. J.:

This is an action for divorce. For convenience the parties will hereafter be referred to as husband and wife. The wife charged extreme cruelty in her complaint. The husband answered denying some of the facts charged and admitting others. A prior decree of divorce a mensa et thoro granted the husband by the Supreme Court of the District of Columbia was also pleaded in the answer as a bar to the wife's alleged cause of action. She was granted a divorce. A motion for a new trial was made and denied, from which this appeal is taken.

On the trial of the case an exemplified copy of the proceedings in the Supreme Court of the District of Columbia was introduced in evidence. In rebuttal the wife introduced certain testimony for the purpose of showing that the appearance of an attorney for her in the proceedings in the court of the District of Columbia was without authority from her, which was objected to by the husband, and its admission assigned as error, in that it constituted a collateral attack upon the judgment of said court, and was therefore incompetent, irrelevant, and immaterial. The trial court found that the husband's affirmative defense of res adjudicata of the issue of the husband's extreme cruelty to the wife was not sustained by the evidence, which is also assigned as error. The primary question presented is: Does the decree of the Supreme Court of the District of Columbia granting the husband a legal separation from bed and board under the laws of the District of Columbia constitute a bar to the wife's alleged cause of action in this case?

1. A preliminary question must first be disposed of. The jurisdiction of the District of Columbia court to render the decree, which it is claimed operates as an estoppel on the wife in this divorce action, is challenged by her counsel. In this respect it is asserted that the decree is not based on her default entered pursuant to the constructive service of summons, but on her appearance by an attorney, which appearance it is claimed was unauthorized. Conceding that the decree is based on such appearance, we are nevertheless of the opinion that the recital thereof in the decree creates a presumption that the appearance was duly authorized, which presumption cannot be overthrown by evidence aliunde. We are not prepared to say that the evidence introduced for that purpose proves a want of authority in the attorney who appeared for the respondent in the District of Columbia court proceedings, but its introduction constituted error. In the face of a collateral attack, the authority of an attorney to appear for the person whom he assumes to represent is conclusively presumed. Pressley v. Lamb, 105 Ind. 171, 4 N. E. 682; Corbitt v.

Timmerman, 95 Mich. 581, 55 N. W. 437, 35 Am. St. Rep. 586; Cigler v. Keinath, 167 Ill. App. 65. See, also, authorities collected in note 4, 1 Freeman on Judgments (4th ed.), pp. 227, 228. As pointed out by the author in the last work referred to in paragraph 128, there is a conflict of authority as to the rule stated, but this court has heretofore held that the authority of an attorney to appear cannot be questioned in a collateral attack. Deegan v. Deegan, 22 Nev. 185, 37 Pac. 360, 58 Am. St. Rep. 742. No good reason appears why a different rule should be adopted.

2. We cannot agree with counsel for respondent that the attack made on the decree is direct and not collateral, for the reasons assigned by him, namely: Because the decree is pleaded in the answer, and its validity denied in the reply, and because the attack is directed to the jurisdiction of the court. These conditions have no bearing upon the character of the attack made upon the decree. The distinction between a direct and collateral attack is clearly drawn. Van Fleet on Collateral Attack, sec. 3, says:

"Any proceeding provided by law for the purpose of avoiding or correcting a judgment is a direct attack which will be successful upon showing error; while an attempt to do the same thing in any other proceeding is a collateral attack, which will be successful only upon showing a want of power."

3. These definitions have been approved by this court in Martin & Co. v. Kirby, 34 Nev. 205, 215, 117 Pac. 2. Unquestionably, respondent's attempt to avoid the effect of the decree of the District of Columbia court in the present action is a collateral attack. The appearance of the wife gave the Supreme Court of the District of Columbia complete jurisdiction to enter the decree, and it must be accorded the same effect in matters res adjudicata as the decree or judgments of state courts. Embry v. Palmer, 107 U. S. 3, 2 Sup. Ct. 25, 27 L. Ed. 346.

4. We come now to the final question, and a further statement of the facts is necessary to elucidate our

views in regard to it. It appears from the District of Columbia record that the parties were married in the District of Columbia on the 19th day of March, 1913, and lived together as man and wife in said district until November 16, 1920, except on several occasions between their marriage and said date when the wife left their home, but continued to reside in the district. On this last-mentioned date the wife left the home taking with her their two children, and has never returned. On August 5, 1919, she left the home taking with her the two children and did not return until March, 1920. During this period she brought a suit against the husband in the Supreme Court of the District of Columbia, praying for a divorce a mensa et thoro which was dismissed before it was reached for trial. Thereafter, on December 23, 1920, she filed her petition in the Supreme Court of the District of Columbia for a divorce a mensa et thoro. During the pendency of these proceedings she filed a præcipe in the office of the clerk of said court directing the dismissal of the cause. On September 24, 1921, or immediately thereafter, the wife left the District of Columbia, and took with her the two children. On March 28, 1922, she filed her complaint in this action praying for a divorce, and alleging that for more than six months last past and next immediately preceding the commencement of this action she had been an actual bona-fide resident of the city of Reno, county of Washoe, State of Nevada, and was granted a decree of divorce on January 16, 1923. The acts alleged as cruelty upon which the divorce was granted were all committed in the District of Columbia.

In the meantime, on the 28th day of October, 1921, the husband filed his action in the Supreme Court of the District of Columbia seeking a legal separation from the bed and board of the wife. The action was based on desertion and cruelty committed in the District of Columbia. In this proceeding a decree was entered in the court of the District of Columbia on the 9th day of May, 1922, granting the husband a legal separation from the bed and board of the wife.

5.   Upon this state of facts it becomes unnecessary to inquire as to whether the husband's cruelty, as alleged in the complaint, was litigated and determined in the former proceeding with resulting res adjudicata, for, under well-established rules of law, the decree of the District of Columbia court, when given its legal effect, estops the wife from acquiring such domicile in this state as would be essential to give the court which granted the decree of divorce jurisdiction to entertain the action.   The general rule as to the domicile of the wife is, as stated by Mr. Bishop:

"That marriage creates a unity of the parties which gives them one domicile, that the husband has the authority to determine where it shall be, and that consequently the wife's follows his, and his does not change with hers." 2 Bishop on Marriage and Divorce, par. 125.

The wife may, however, under certain conditions acquire a domicile apart from her husband.   The Supreme Court of the United States in the case of Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604, said:

"The rule is that she may acquire a separate domicile whenever it is necessary or proper that she should do so.   The right springs from the necessity for its exercise, and endures as long as the necessity continues."

The same doctrine is upheld in Ditson v. Ditson, 4 R. I. 87; Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129; Aspinwall v. Aspinwall, 40 Nev. 55, 184 Pac. 810.

"Eminent authority," says this court in the last case cited, "supports the proposition that under modern law the wife may acquire a domicile separate and distinct from that of her husband where the unity of the husband and wife is breached, as, for instance, where the husband has given cause for divorce"—citing authorities.

"The domicile of the wife is for general purposes determined to be that of the husband.   By leaving him, however, if for just cause, she may acquire a residence in another state, in which she may maintain an action for divorce." 14 Cyc. 584.

6. The facts previously set forth show that during all of their married life, and until the wife departed for Nevada, the domicile of the parties was in the District of Columbia, and, in the light of the principles stated, the legal effect of the decree of the court of said district is to estop her from acquiring a domicile in another state for divorce purposes. This being true, the lower court, as previously stated, was without jurisdiction to try the action, for the proposition that a domicile in this state of one of the parties is essential to empower its courts to dissolve the marital bond is concluded by a previous decision of this court.

"In applying the statute of this state relative to jurisdiction in divorce proceedings, as in applying the statutes of any state," said this court in a recent decision, cited supra, "the matrimonial domicile of one or the other of the parties to the action, it must be borne in mind, is essential to confer jurisdiction over the status of the marital relation. The complaint must allege that one or the other of the parties has a domicile within the jurisdiction of the court in addition to alleging any other facts necessary to comply with statutory requirements such as residence or presence within the county where the suit is instituted. Statutes regulating divorce are presumed to be enacted with reference to the general law relative to the marriage relation and are to be construed with reference to that law. Marital status follows marital domicile and is independent of the corporeal presence of either or both of the parties. It is for this reason that the courts of one state are without power to annul a marital status which exists in another state. Where neither party to the suit has a domicile within the state where the action is instituted, the courts of that state are without jurisdiction of the subject-matter of the action. A state may empower its courts to dissolve the marital relation where only one of the parties has a domicile within the state, and its statutes may make it immaterial whether it be the domicile of the plaintiff or the defendant. Such, we

think, is the law of Nevada." Aspinwall v. Aspinwall,
supra.

For the reasons given the judgment must be reversed.
It is so ordered.

### ON PETITION FOR REHEARING

April 18, 1924.

*Per Curiam:*

Rehearing denied.            ————