GEORGE H. ALLAN v. HARGADINE-MCKITTRICK DRY GOODS COMPANY ET AL., Appellants.—28 S. W. (2d) 670.

Division One, June 3, 1930.

*Nagel & Kirby* and *Charles P. Williams* for appellant.

402

*Abbott, Fauntleroy, Cullen & Edwards* and *Anderson, Gilbert & Wolfort* for respondent.

RAGLAND, J.—On March 21, 1927, respondent, Allan, recovered a judgment in Division No. 1 of the St. Louis Circuit Court against the Hargadine-McKittrick Dry Goods Company in the sum of $21,-000. Thereafter, on December 21, 1927, a writ of execution sued out on the judgment was levied upon shares of the capital stock of the Department Stores Investment Company belonging to the execution defendant. The certificates of such stock, together with all the books, papers, records and assets of the Hargadine-McKittrick Dry Goods Company, were in the possession and under the control of Robert McKittrick Jones and Thomas T. Fauntleroy, trustees appointed under and pursuant to the judgment rendered by the Supreme Court of Missouri on February 5, 1919, in the case of Christian J. Zeitinger et al. v. Hargadine-McKittrick Dry Goods Company et al., and the orders of Division No. 2 of the Circuit Court of the City of St. Louis, made in conformity with the mandatory directions given it by the Supreme Court in remanding said cause.

Sometime prior to the levy of the execution the trustees had been served with notices of garnishment by other judgment creditors of the Hargadine-McKittrick Dry Goods Company with respect to which they had applied to said Division No. 2 of the Circuit Court for instructions, and that court in response to such application had made the following order:

"And the court, having read and considered the said motion, and having heard the suggestions of counsel with respect thereto, doth hereby order and direct said trustees and each of them, at the expense of the trust estate in their charge, and until otherwise

ordered by this court, to employ counsel, and to defend to the extent that such counsel advise will be expedient, all efforts by creditors of said defendant Dry Goods Company to in any manner seize by attachment, garnishment or other legal procedure, any of the assets of the Hargadine-McKittrick Dry Goods Company that are in the custody and control of said trustees, and are still under the jurisdiction of this court as assets *in custodia legis* in the above-entitled cause. Said authority shall include authority to assist and co-operate with counsel for any other person or corporation in whose hands there may be assets of said Dry Goods Company, subject to the order of said trustees, and that are attempted to be seized or garnished by creditors of said Dry Goods Company in the hands of said other persons or corporations; it being the intent of this order to authorize said trustees to employ counsel as and when they deem such employment necessary for the purpose of protecting and preserving intact the estate and assets of said Dry Goods Company, to the end that the same may be disposed of under the orders and directions of this court in the manner prescribed by the mandate of the Supreme Court of the State of Missouri heretofore filed in the above-entitled cause.''

Pursuant to the general order above set out the trustees, joining with the defendant therein, moved to quash the execution in question here on the ground, among others, that the property levied upon was *in custodia legis*. Division No. 1 of the Circuit Court, the court in which the writ had been sued out, after an extended hearing, overruled the motion to quash, and from its order in so doing the Hargadine-McKittrick Dry Goods Company and said trustees were granted an appeal to this court.

The primary question involved is whether the property, at the time of the levy of the execution, was in the legal custody of Division No. 2 of the Circuit Court through the orders and judgments theretofore made and rendered in the case of Christian J. Zeitinger et al. v. Hargadine-McKittrick Dry Goods Company et al., then pending before it. Preliminary to a consideration of that question a statement in general outline of the proceedings which culminated in part in the appointment of the trustees in the case just mentioned is necessary.

Prior to December 18, 1915, the officers and directors of the Hargadine-McKittrick Dry Goods Company had from time to time wrongfully and unlawfully taken from its treasury moneys aggregating $2,739,000 and had used the same in the purchase, acquisition and maintenance of leaseholds, under leases for terms of ninety-nine years, in six parcels of ground which comprised City Block 128 in the city of St. Louis. The leaseholds had been taken in the name of six dummy real estate corporations which they owned and controlled. In order to finance the construction

of a large mercantile and office building on the combined leaseholds two other corporations had been formed: The Annuity Realty Company and the Building Company. The title to the leaseholds had been transferred to the Annuity Realty Company and it had in turn leased the entire block to the Building Company, obligating the latter to erect thereon the Railway Exchange Building. The former had issued and sold to the public annuity certificates payable, principal and interest, out of the rents to be received by it from the Building Company, and the latter Company had issued and sold bonds secured by mortgage on its leasehold and the building erected thereon. On the date last mentioned Christian J. Zeitinger and others, minority stockholders of the Hargadine-McKittrick Dry Goods Company, commenced a suit in equity, charging waste, mismanagement and unlawful diversion of the corporation's funds, and praying an accounting at the hands of its officers, directors and others, the appointment of a receiver and the establishment of a paramount equitable lien in favor of the Dry Goods Company on the building and leaseholds in City Block 128. In such suit the officers and directors of the Dry Goods Company, the holders of the securities issued by them, and other persons and corporations who were alleged to have benefited by the wrongful diversion of the Dry Goods Company's assets were made parties defendant. Thereafter the circuit court rendered an interlocutory decree in the cause, adjudging in favor of plaintiffs the principal issues tendered by the petition in respect to waste, mismanagement and wrongful diversion of funds, and appointed a receiver of "all of the property of the Hargadine-McKittrick Dry Goods Company, including all the business and good will, choses in action, equitable interests, rights and things in action, and all books, papers, documents and records of the said Dry Goods Company." The decree authorized the receiver "to demand, collect, receive and obtain, and in his discretion to institute and prosecute and defend, without the further order of the court all suits, actions and proceedings necessary or proper in his discretion in order to obtain, recover, realize upon, enforce or retain any of such property, etc."

From an order of the circuit court refusing to vacate the appointment of a receiver the Hargadine-McKittrick Dry Goods Company was allowed an appeal to the Supreme Court. On such appeal no supersedeas was granted, and pending the appeal the receiver instituted a number of suits: among others, one to establish an equitable lien on the Railway Exchange Building and leaseholds heretofore mentioned.

The appeal was disposed of by the following judgment of the Supreme Court:

"Now at this day come the said parties, by their respective attorneys, and, pursuant to their stipulations heretofore filed herein on the 31st day of January, 1919, and on the 5th day of February, 1919, it is considered, ordered and adjudged by the court as follows:

"(1) That the interlocutory decree of said circuit court, rendered herein on the 8th day of January, 1917, be, and the same is hereby, reversed with all costs against said appellant;

"(2) That this cause be, and the same is hereby, remanded to the said Circuit Court of the City of St. Louis, with directions to said Circuit Court to tax against the appellant the costs, including reasonable compensation to the Receiver for his administration of the estate of the said appellant, together with all reasonable attorneys' fees and other costs or expenses which the said Receiver has incurred in the administration of the estate, and also the compensation due plaintiffs' (respondents') attorneys for their services, with disbursements, and the compensation due the referee and the attorneys for the appellant for their services, with disbursements, and to order all costs paid as and when allowed out of the corpus of the estate now in the hands of the Receiver, and to make such further orders and entries as may be necessary to dispose of the litigation and estate in the said Circuit Court, in accordance with said stipulations of the parties filed in this court, and those heretofore executed and to be filed in said Circuit Court, and thereupon to dismiss the plaintiffs' (respondents') petition herein in accordance with the said stipulations."

There were five separate writings constituting the stipulations referred to in the judgment just set out: three were filed in the Circuit Court and two in the Supreme Court; certified copies of the latter accompanied the mandate on the remand of the case.

One of the stipulations (designated in the record as Exhibit B) provided:

"(3) Upon receipt of mandate from the Supreme Court, all assets in the hands of the receiver shall be by him surrendered and turned over to two trustees, one of whom shall be appointed by plaintiffs' attorneys, and the other of whom shall be appointed by defendants' attorneys, and said Trustees shall hold said assets in joint control until performance of this stipulation, and shall pay promptly from the same all costs that may be allowed as hereinafter provided, and upon this stipulation having been fully performed, they shall surrender and turn over the remainder of said assets to the Company or its Liquidating Committee.

"(4) The costs of the Supreme Court on appeal from the decree shall be taxed by the clerk of that court, and paid by the Trustees out of the funds now in the hands of the Receiver, so far as the same have not heretofore been paid. The costs of all litigation heretofore brought by the receiver, or by the Hargadine-McKittrick

Dry Goods Company, and now pending, shall be taxed by the respective courts in which the same are pending, and shall thereupon be paid by the Trustees out of said same fund. The costs of Cause No. 1179, pending in Division No. 13 of the Circuit Court, excluding the compensation of plaintiffs' attorneys, shall be taxed by the presiding judge of that court, and shall thereupon be paid by the Trustees out of said same fund. The compensation of plaintiffs' attorneys shall be ascertained as provided by separate stipulation, hereto attached and made a part hereof, and when so ascertained shall be forthwith paid by said Trustees out of said fund, direct to plaintiffs' attorneys, and in accordance with the finding.''

Other stipulations provided for the surrender by certain of the officers and directors of the Hargadine-McKittrick Dry Goods Company of all the shares of the capital stock of said corporation held by them, and for the delivery by a representative of the holders of Annuity Certificates and Building Company bonds of certain securities to the trustees to be appointed: the surrender of the shares to operate as a settlement and discharge of all claims against the officers and directors named; and the delivery of the securities to effect a release and satisfaction of the cause of action asserted in the equitable lien suit. It was also provided by the stipulations that plaintiffs, representing the minority stockholders, should be entitled to name one director of the board of directors of the Dry Goods Company.

After the cause was remanded to the circuit court that court, pursuant to the mandatory directions of the Supreme Court, made, among others, the following order:

''(7) That the Receiver shall be and he is hereby further authorized, . . . to turn over and deliver up to the aforesaid trustees, Robert McKittrick Jones and Thomas T. Fauntleroy, all of the balance of the property and moneys . . . remaining in his possession and custody as such Receiver, and all books, papers and records of said company, the said trustees to hold said property and moneys, books, records and papers in joint control until performance of the stipulations made and entered into by and between the parties to this cause by their attorneys under date of January 30, 1919, and upon such stipulation having been fully performed they shall surrender and turn over the remainder of said property and moneys and said books, records and papers to the Hargadine-McKittrick Dry Goods Company, or its liquidating committee, provided that said trustees and said company shall take said assets charged with all liability for which said Henry S. Caulfield, as Receiver, is or might be held personally responsible and not hereinbefore ordered to be paid by the Receiver out of the assets of the company and not covered by the aforesaid reservations, including any excess over the amount above reserved therefor

of any taxes aforesaid and any court costs and expenses connected therewith or with the withdrawal of the Receiver and the substitution of said company in any suit or suits.''

In the present proceeding—on the motion to quash the execution —the evidence was conflicting as to whether or not all the stipulations of the parties in Zeitinger et al. v. Hargadine-McKittrick Dry Goods Company et al., had been fully performed at the time of the levy. It is conceded, however, that the circuit court in that case had not made the final orders ''necessary to dispose of the litigation and estate;'' that no application had been made to it to order the trustees to deliver the assets in their custody to the Dry Goods Company, and it had not done so; and that the respondent in this case had made no application to the division of the circuit court in which the Zeitinger case was pending for leave to levy upon the assets in the hands of the trustees or to summon the trustees as garnishees.

''Property is in the custody of the law when it has been lawfully taken by authority of legal process, and remains in the possession of a public officer (as, a sheriff) or an officer of a court (as, a receiver) empowered by law to hold it.'' [Black's Law Dictionary (2 Ed.) 309.] The assets of the Hargadine-McKittrick Dry Goods Company while in the custody of the receiver appointed by the court in the Zeitinger case were therefore unquestionably in the custody of the law. Did they pass from such custody when they were delivered by the receiver under the order of the court to the so-called trustees? In other words, were the trustees merely the agents of the Hargadine-McKittrick Dry Goods Company or its shareholders, parties to the litigation? or were they the agents of the court? A brief examination of the sources of the powers conferred upon them and of the purposes for which they were appointed will aid in determining their status.

One of the trustees was appointed by plaintiffs' attorneys in the Zeitinger case and the other by the defendants' attorneys, as provided for in the ''stipulations.'' But the stipulations on their face contemplated that they should be embodied in, and become effective through, a judgment of the Supreme Court, and the judgment of that court did so incorporate them and then remanded the cause to the circuit court to carry them out. The stipulations thereupon became neither more nor less than integral parts of the judgment of the Supreme Court.

The stipulations, according to their purport, would when carried out effect a complete settlement and discharge of the several causes of action sued on, but they could not be carried out immediately, because the litigation had entered upon so many ramifications through the receivership and because there were so many diverse

interests involved. Besides, fees, including disbursements, for plaintiffs' counsel, requiring extended hearings by the court, were to be allowed and paid out of the assets. The stipulations—the judgment —provided that the trustees should have joint control of the assets until the stipulations were fully complied with. And when complied with the assets were to be delivered by the trustees to the Hargadine-McKittrick Dry Goods Company and the petition was to be dismissed, and the cause thereby brought to a final determination.

It seems entirely clear that the judgment of the Supreme Court and the orders of the circuit court made pursuant to its mandate contemplated that the assets of the Dry Goods Company should remain in the custody of the latter court until the judgment of the former was fully complied with. Without such continuing custody the carrying out of the judgment through the orders of the circuit court could in essential respects have been easily thwarted. Merely calling the persons to whom the actual custody was transferred trustees instead of receivers did not affect the character of the duties with which they were entrusted. They were in fact substituted receivers.

As already noted there was some effort on the part of respondent in the court below to show that all the stipulations in the Zeitinger case had been fully complied with, and hence that there was no legitimate purpose to be served by the retention of the custody of the property levied upon by Division No. 2 of the circuit court. We have not considered the evidence offered in support of this contention, because it is one that Division No. 1 should not have entertained. The jurisdiction to determine whether all the purposes for which the trustees were appointed had been accomplished rested with Division No. 2: it could not be exercised by any other court of concurrent jurisdiction. [State v. Reynolds, 209 Mo. 161, 107 S. W. 487.] That Division No. 2 was asserting its control over the property at the time the execution was levied upon it must be conceded on the record. The last order made by it with respect to releasing its custody, shown by the record in this cause, concluded as follows:

"The court does not at this time direct the trustees to turn over to the Hargadine-McKittrick Dry Goods Company, the assets, books and records in their custody, nor does it order a dismissal of this cause, because there are still pending herein certain motions other than that disposed of by this order, and as to which further process should be made prior to the turning over of said assets and prior to such dismissal."

And the order just quoted was followed some time later by the one heretofore set out, directing the trustees to resist "all efforts by creditors of said defendant Dry Goods Company to in any manner seize by attachment, garnishment or other legal procedure,

any of the assets of the Hargadine-McKittrick Dry Goods Company that are in the custody and control of said trustees, and are still under the jurisdiction of this court, as assets *in custodia legis* in the above-entitled cause.''

Inasmuch as the property of the Dry Goods Company was in the legal custody of Division No. 2 of the St. Louis Circuit Court, it could not, without that court's leave, be reached by an execution issued out of Division No. 1. [Lumber Company v. Harvester Company, 215 Mo. 221, 237, 114 S. W. 1087.] No such leave was applied for or obtained: it follows that the order appealed from should be reversed and the cause remanded with directions to the circuit court to quash the execution under which the· levy was made. It is so ordered. All concur.